## MISLIK v. STATE OF INDIANA.

[No. 22,781.  Filed December 9, 1915.]

1. CRIMINAL LAW.—*Plea of Guilty.—Denial of Petition to Vacate.—Review on Appeal.*—The action of the trial court in denying a petition to vacate a plea of guilty will not be disturbed on appeal on the weight of the evidence; nor unless it clearly appears that the accused has been deprived of a substantial right, since it is to be presumed in favor of the trial court that the rights of the accused were properly guarded.  p. 76.

2. CRIMINAL LAW.—*Pleas of Guilty.—Duty of Trial Court.*—A plea of guilty should be entirely voluntary and made by one competent to know the consequences thereof, and the trial court should satisfy itself of these facts before receiving it.  p. 76.

3. CRIMINAL LAW.—*Plea of Guilty.—Denial of Petition to Vacate.—Review.*—Where accused was foreign born and had but slight knowledge of English, and, on being arrested on the charge of larceny, entered a plea of guilty through the arresting officer who acted as interpreter, without being advised as to the consequences of the plea or that he was entitled to be heard by counsel before a jury, and there was no evidence to refute the accused's statement that he did not comprehend the nature or effect of the plea, the court erred in denying the petition to vacate the plea of guilty and enter a plea of not guilty.  p. 77.

4. CRIMINAL LAW.—*Evidence.—Judicial Notice.—Laws of Foreign Countries.*—The court judicially knows that there is a radical difference between our criminal procedure and that of Austria.  p. 77.

From Lake Superior Court; *Virgil S. Reiter,* Judge.

Prosecution by the State of Indiana against Joe Mislik. From a judgment of conviction, the defendant appeals. *Reversed.*

*Walter J. Lotz* and *Charles R. Macnab*, for appellant.

*Richard M. Milburn*, Attorney-General, *James A. Patterson, Horace M. Kean, Leslie R. Naftzger, Omer S. Jackson, Michael A. Sweeney* and *Wilbur T. Gruber*, for the State.

MORRIS, C. J.—On February 11, 1915, an affidavit was filed in the Lake Superior Court charg-

ing appellant, Gustave Dobosky (see *Dobosky* v. *State* [1915], 183 Ind. 488, 109 N. E. 742), Andy Olim and five others with the larceny of meat, worth more than $100, the property of the Chicago and Erie Railroad Company. The record shows that on the same day the defendants entered a plea of guilty and appellant was adjudged guilty of the crime of grand larceny and his punishment fixed at imprisonment in the Jeffersonville reformatory for a period of one to fourteen years. On the following day he secured counsel, and through them notified the prosecuting attorney that he would forthwith file a verified petition to vacate the judgment and withdraw his plea of guilty. This motion was promptly filed and avers, among other things, that on February 10, 1915, appellant was employed by the Standard Steel Company and was living in one of its houses in Hammond; that about midnight of said day he was arrested and taken from his home to the Hammond city jail and held there without opportunity to consult his wife and relatives; that he is of foreign birth, with little knowledge of the English language; that he did not know that he had a right to trial by jury, and to be represented by counsel and was not so informed; that at the hearing he was unrepresented; that through the efforts of police officers a plea of guilty was entered in the cause; that he did not then know the nature or consequences of a plea of guilty; that he was never arrested before; that he is innocent of the crime charged. A like petition was filed by said Olim, and the petitions were heard together. The record shows that no warrant was issued for the arrest of appellant. Following the recital of the filing of the affidavit, by the prosecuting attorney, appears the following: "And their bail herein is fixed in the penal sum of $1,000 each, and said defendants be-

ing in custody and now in open court, each being arraigned, for their plea herein say that they are each guilty of the commission of the offense charged in the affidavit, to wit, the crime of grand larceny." This entry is followed by the judgment of conviction.

The evidence shows, without contradiction, that on the night of February 10-11, at about 1:30 a. m., appellant was arrested at his residence and taken to the Hammond city jail by George T. Hanlon, police captain, and Joe Smith, a policeman, "accompanied by some of the Erie men and some C. & O. men;" that when arraigned the communication between court and prisoner was through said policeman, Joe Smith, acting as interpreter; that appellant is an Austrian, and speaks the Russian language, and has but slight knowledge of English; that Smith speaks and understands both languages. Peter Austgen, chief of police, of Hammond, was called as a witness by the State. He testified among other things, that early in the morning of February 11, before the filing of the affidavit, he went to the cell where the defendants were confined, and, through the bars, talked to "the whole bunch," without any interpreter. He said, "I asked them what they intended to do, and they told me they would all go up to the court and tell the truth. I don't know which one of them told me. * * * I says 'why did you go out there and steal that stuff?' I says, 'did you go out there and steal because you had nothing to eat?' 'Yes,' they says. I says, 'well, you want to tell the court that also.'" He further testified that he asked them whether they wanted a lawyer, "and they said they had no money;" that he did not ask them where their friends and relatives were. The following question was asked the witness, and the following answer

made: "Who asked you to talk with them as to what they should do, as to whether they wanted to plead guilty or not? A. I felt that my business to find out whether they wanted a lawyer or to plead guilty." The witness further testified that he afterwards went back to the cell with the prosecuting attorney. In relation to that visit, the deputy prosecuting attorney propounded the following questions, to which witness made these answers: "Q. I will ask you as to whether or not, when you went back to the cells to talk with them, accompanied by myself, deputy prosecutor, as to whether or not they were asked, whether or not they wanted to plead guilty and whether or not they took this course? A. Yes, sir, you did ask them that. Q. What did they say? A. They said they would all come up here and tell the truth." This witness was of the opinion that appellant understood what witness said.

Joe Smith, the policeman, also testified for the State, on the hearing of this petition. He says that when the defendants were arrested, some of them spoke English; that witness talked to appellant and Olim in Russian, and at the same time the police captain talked to them "in American;" that when appellant was arraigned, witness acted as interpreter and conversed with appellant in the Russian language; that he asked appellant if "he was guilty in this case—he was after the meat down there at Griffith, and he said that he was." Witness further testified that while he asked appellant and Olim, in Russian, if they "plead guilty," that he did not inform the court that they "plead guilty." Andy Olim testified that he was in the vicinity where the meat was stolen, getting some wood and had nothing to do with taking the property; that he told the interpreter to tell the court that he "was

there," but not that he participated in the larceny. The appellant testified on this hearing, through an interpreter, duly sworn, that he was not guilty and did not at the time of arraignment, understand what such a plea meant; that when arraigned Joe Smith merely told him to say that "I was there," and appellant authorized the interpreter to make such statement, and no other.

The court denied appellant's petition, and from such judgment this appeal is prosecuted. A situation somewhat resembling this was presented in *Dobosky* v. *State, supra,* In that case, however, no evidence was heard on the presentation of the petition. It was there held that this court will not interfere with the ruling of the lower court if such action depends on the weighing of evidence, but that otherwise the discretion vested in the *nisi prius* court may be reviewable.

That a plea of guilty should be entirely voluntary, and made by one competent to know the consequences thereof, and that the trial court should satisfy itself of these facts before receiving it, appears to be well settled. *Dobosky* v. *State, supra;* 8 R .C. L. 115; *Pope* v. *State* (1908), 56 Fla. 81, 47 South. 487, 16 Ann. Cas. 972, note; *Krolage* v. *People* (1906), 8 Ann. Cas. 235, note; *Little* v. *Commonwealth* (1911), 142 Ky. 92, 133 S. W. 1149, 34 L. R. A. (N. S.) 257, Ann. Cas. 1912 D 241, note; 12 Cyc 353. Courts of review are, and should be, loath to overturn a ruling of a trial court in cases of this character unless it clearly appear that the accused has been deprived of a substantial right. The trial judge has like official responsibility to that of the judges of an appellate court, and every reasonable presumption must be indulged that he properly guarded the rights of an accused. A consideration

of the facts here presented, however, constrain us to hold that the court erred in its view of the law. The propriety of receiving a plea of guilty through an interpreter, in the absence of counsel, or full explanation of the consequences of such plea by the court itself, may well be doubted. Here the situation was aggravated by the fact that the interpreter had himself helped to arrest the accused, and might naturally be expected to desire his conviction. It is further aggravated by the fact, as shown by the record, that at the arraignment neither the court nor the interpreter suggested to the prisoner the fact that he was entitled to be heard by counsel, even if he did not have any money. Notwithstanding our constitutional provision that no person, in a criminal prosecution, shall be compelled to testify against himself (Constitution, Art. 1, §14), the interpreter conceived it to be his duty to inquire of appellant if "he was after the meat down there," rather than to ask him, what if any plea he desired to make to the charge. Courts judicially know that there is a radical difference between our criminal procedure and that of Austria—the country from which appellant migrated. It appeared at the arraignment that appellant could understand the court only through an interpreter, and that fact alone imposed a special duty on the trial court to know, before a plea of guilty was received, that appellant fully comprehended the nature and consequences thereof, and that if he so desired, he was entitled to be heard by counsel, before a jury.

The appellant says he did not comprehend, when arraigned, the nature or effect of the plea. The evidence of what occurred before and at the arraignment does not refute the truth of the statement.

Indeed, in some respects, it corroborates it. The judgment is reversed with instructions to vacate the judgment of conviction, and permit appellant to withdraw his plea of guilty, and enter one of not guilty. The clerk of this court is directed to make and certify the usual order for the return of appellant to the custody of the Lake County sheriff.

NOTE.—Reported in 110 N. E. 551. As to *res judicata* in criminal proceedings, see 103 Am. St. 20. On a plea of guilty under intimidation see 34 L. R. A. (N. S.) 257. See, also, under (1) 12 Cyc 888; (3) 12 Cyc 351, 352; (4) 16 Cyc 883.