RAUL JAUN LOVERA *v.* STATE OF INDIANA.

[No. 272A99. Filed June 14, 1972.]

---

2. So said Justice Cardoza in *Beatty* v. *Guggenheim Exploration Co.* (1919), 225 N.Y. 380-386, 122 N.E. 378.

*Mrs. Harriette Baily Conn,* State Public Defender, *Paul J. Baldoni,* Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

SHARP, J.—On November 5, 1969, an affidavit was filed in the City Court of South Bend, Indiana, charging the Defendant, Raul Juan Lovera, with possession of a dangerous drug, to-wit: Marijuana. Immediately thereafter the Defendant waived arraignment in open court and entered a plea

of guilty. The entire record of the proceedings in the City Court are as follows:

"Comes now Richard Thomas and files affidavit charging the defendant with the offense of Possession of a Dangerous Drug, Marijuana on November 4, 1969, which affidavit reads in the words and figures following, to-wit:

\* \* \*

'defendant waives being arraigned in open court and pleads guilty.

'And now the Court having heard the evidence and being duly advised now finds the defendant guilty.

'And now the Court assesses defendant's fine at $100.00 and costs.

'And now the defendant is sentenced to five (5) days in the County Jail.' "

On November 16, 1970, the Defendant filed his Petition for Post-Conviction Relief alleging "trial was held contrary to the due process provisions of the United States Constitution and the Constitution of the State of Indiana in that Defendant was not advised of his Constitutional Rights; he was not informed he could have counsel to represent him; if he could not afford counsel one would be provided for him."

The facts alleged to support the above assertion are as follows:

"Defendant was arrested without a warrant and automobile in which he was riding was searched without a search warrant. The Sheriff interrogated defendant without advising him of his Constitutional Rights. Sheriff then advised defendant to plead Guilty but failed to inform defendant he should be represented by counsel and if unable to engage one an attorney would be provided free of charge."

The Prosecuting Attorney of St. Joseph County, Indiana, explicitly denied the above quoted allegations from the Defendant's Petition for Post-Conviction Relief.

A Motion to Amend the Petition for Post-Conviction Relief was also filed. Argument was held on the Petition for Post-Conviction Relief as Amended and denied on December 17,

1970. A Motion to Correct Errors was filed by the Appellant and overruled by the trial court on June 15, 1971. This appeal is taken from that ruling. On October 28, 1971, an agreed statement of the proceedings was filed in the trial court signed by the Deputy Public Defender, Prosecuting Attorney and approved by the trial judge in accord with Rule AP. 7.3. Since the contents of the agreed statement is essentially all the record we have before us in this case we deem it necessary to set it forth here:

## " 'RECORD OF THE PROCEEDINGS

'On November 4, 1969, Raul J. Lovera pled guilty to the offense of the Possession of a Dangerous Drug, to-wit: Marijuana, and was sentenced to five [5] days in the St. Joseph County Jail and fined one hundred dollars [$100.00] plus costs for a total of one hundred twenty-four dollars [$124.00].

'On December 17, 1970, at about 12:30 P.M. in the City Court of South Bend, Indiana, the Honorable George E. Herendeen entertained Mr. Raul J. Lovera's Petition for Post-Conviction Relief filed pursuant to Rule P.C. 1 on November 23, 1970, and the Amendment thereto filed on December 17, 1970, Petitioner was represented by Paul J. Baldoni, Deputy Public Defender for the State of Indiana, and Peter Nemeth, Deputy Prosecuting Attorney for St. Joseph County, represented the State.

### 'EVIDENCE PRESENTED BY PETITIONER

'Witnesses at the hearing on Mr. Lovera's Petition for Post-Conviction Relief were Mrs. Lovera, the former Maria Valina, Miss Pamela Allen and Mr. John Hutcheson, who had travelled from Pennsylvania to South Bend, Indiana, to testify.

'*Mr. John Hutcheson,* after being sworn, testified as follows:

'On the morning of November 5, 1969, he (Mr. Hutcheson) along with Mr. Lovera and several other individuals were brought from the County Jail to the South Bend City Court by a Sheriff's Deputy of the St. Joseph County Sheriff's Department. Judge Herendeen entered the courtroom, everyone rose, and then were seated. Mr. Hutcheson faintly remembered that Judge Herendeen might

have addressed all those then present concerning their constitutional rights. The Judge then proceeded to dispose of several individuals who were charged with public intoxication; after which each person charged with the Possession of a Dangerous Drug, to-wit: Marijuana, was called individually before the bench by Judge Herendeen. In all there were twelve [12]. After having their affidavits read to them, they all waived arraignment and each pled guilty. Judge Herendeen then delivered a " 'sermon' " to all twelve [12] persons who were charged with the Possession of a Dangerous Drug, to-wit: Marijuana. This entire proceeding, including a three [3] minute recess, took one-half [½] hour.

'Judge Herendeen did *not* advise each accused individually, specifically Mr. Lovera, as to his constitutional rights. Further, Judge Herendeen did not apprise himself of the fact that Mr. Lovera was an alien who would be liable for deportation following his plea of guilty to the charge of the Possession of a Dangerous Drug, to-wit: Marijuana.

*Miss Pamela Allen and Mrs. Lovera* (the former Miss Maria Valina) testified as follows:

'On the morning of November 5, 1969, they were together brought into the South Bend City Court by a matron of the Sheriff's Department. When they arrived, Judge Herendeen and the other male defendants were already present in the courtroom.

'Judge Herendeen called Mr. Lovera before him, read to him the affidavit charging him with the Possession of a Dangerous Drug, to-wit: Marijuana, and Mr. Lovera pled guilty and waived his right to arraignment, accepted Mr. Lovera's guilty plea without specifically advising said defendant concerning his constitutional rights. In fact, Judge Herendeen followed this same procedure in relation to the other eleven [11] co-defendants. Further, Judge Herendeen, at no time, informed Mr. Lovera that, since he was an alien, on his plea of guilty he could be cited for deportation.

'Judge Herendeen, having accepted guilty pleas of all twelve [12] co-defendants, concluded the proceedings by delivering a " 'sermon' " to all of them.

*Mr. Raul J. Lovera,* after having been sworn, testified in his own behalf as follows:

'On the morning of November 5, 1969, he (along with several other male co-defendants, including Mr. John Hutcheson) was transferred by a Sheriff's Deputy from

the St. Joseph County Jail to the South Bend City Court. When they arrived Judge Herendeen was not present in the courtroom. Shortly thereafter, Judge Herendeen entered the courtroom, everyone rose, then was seated. The Judge then disposed of several public intoxication cases.

'After several co-defendants had pled guilty, Mr. Lovera was called before Judge Herendeen, waived arraignment, and entered his plea of guilty to the charge of Possession of a Dangerous Drug, to-wit: Marijuana. He was not advised by the court of his constitutional rights or that he could be cited for deportation because of said plea. Further, Mr. Lovera stated that he had, in fact, been cited for deportation because of said conviction. In short, in no manner did Judge Herendeen ever attempt to apprise himself of the fact that Mr. Lovera was pleading knowingly and with full knowledge of the consequences of his guilty plea.

'Following the above-described procedure in all twelve [12] cases, Judge Herendeen accepted the guilty pleas of all twelve [12] co-defendants. Afterwards he delivered a " 'sermon' " to all twelve [12] co-defendants.

'That was all of the evidence presented by the petitioner.

'EVIDENCE PRESENTED BY THE STATE

'The State did not present any evidence.

'OTHER EVIDENCE RECEIVED BY THE COURT

'City Judge George Herendeen stated that he distinctly recalled advising Mr. Raul J. Lovera of his constitutional rights at the time of arraignment on November 5, 1969. He further stated that he did not advise Mr. Lovera that on his plea of guilty he could be cited for deportation. Judge Herendeen also indicated that he had no knowledge that Mr. Lovera could be cited for deportation upon a plea of guilty.

'RULING

'The court then denied Mr. Lovera's Petition for Post-Conviction Relief.' "

We do not agree with the Appellant that the trial judge had a *specific* obligation to determine that the Appellant

was an alien and to advise him *specifically* of the effect of a guilty plea in that regard. This may be decided properly on more generally accepted principles.

A plea of guilty is in itself a conviction. It must therefore be made by the accused freely and understandingly so that the rights afforded under Article 1, Section 13 of the Indiana Constitution can be deemed *intelligently* waived. *Thacker* v. *State* (1970), 254 Ind. 665, 262 N. E. 2d 189. An intelligent waiver of these rights is possible only when the court has first informed the accused of his rights in a criminal prosecution. *Gates* v. *State* (1962), 243 Ind. 325, 183 N. E. 2d 601. It is the duty of the trial court to determine whether a guilty plea is entered freely and understandingly. *Mislik* v. *State* (1915), 184 Ind. 72, 110 N. E. 551.

The above rights were recently summarized in *Brady* v. *U.S.* (1970), 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 747.

The trial court must be especially vigilant in any case where an accused is not represented by counsel to determine that the accused's plea of guilty is intelligently made. *Harris* v. *State* (1932), 203 Ind. 505, 181 N. E. 33; *Von Moltke* v. *Gillies* (1949), 332 U.S. 709, 68 S. Ct. 316, 92 L. Ed. 309.

The affidavit in this case was filed under Acts 1961, ch. 45, § 8, as found in Ind. Ann. Stat. § 35-3338 (Burns 1969), IC 1971, 16-6-8-10, which provides penalties of imprisonment in the "state penal farm for a determinate period not exceeding one (1) year" and also provides an alternative sentence "in the state prison not less than one (1) year or more than ten (10) years." Therefore, the Appellant was charged with an offense which could be defined as a felony under Acts 1905, ch. 169, § 1, as found in Ind. Ann. Stat. § 9-101 (Burns 1956), IC 1971, 35-1-1-1.

In *Bolkovac* v. *State* (1951), 229 Ind. 294, 98 N. E. 2d 250, our Supreme Court stated, at page 299:

"* * * Since § 13 of Article 1 makes no distinction between misdemeanors and felonies, the right to counsel must and does exist in misdemeanor cases to the same extent and under the same rules it exists in felony cases. Many misdemeanors provide substantial punishment by way of fine and imprisonment, and if we held there is no constitutional right to counsel in a misdemeanor case, the legislative door would be open for the destruction of this right by the simple devise of providing for imprisonment in the Indiana State Farm rather than the Indiana State Prison."

and again, at page 306:

"On the question of waiver Mr. Justice Black, in Johnson v. Zerbst (1938), 304 U.S. 458, 465, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 1467, supra, speaking for the court, said:

" 'The constitutional right of an accused to be represented by counsel invokes of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.' "

Thus, there is no distinction in the above rules as they ▮▮▮ apply to persons charged with offenses classed as felonies and those charged with misdemeanors.

The key issue here is whether the record discloses that the ▮▮▮ Appellant freely and understandingly waived the rights implicit in a guilty plea.

The principles applicable here were recently synthesized by Judge DeBruler, speaking for a unanimous court, in *Brimhall* v. *State* (1972), 258 Ind. 153, 279 N. E. 2d 557, 563, stated:

"Because of the grave nature of a guilty plea, the trial court has a duty to closely scrutinize the situation and be sure that the offered plea is freely and understandingly given, for 'the court is backward in receiving and recording the plea of guilty from a prisoner.' Griffith v. State (1871), 36 Ind. 406, 408. As we said in Mislik v. State (1915), 184 Ind. 72, 110 N. E. 551, 'that a plea of guilty should be

entirely voluntary, and made by one competent to know the consequences thereof, and that the trial court should satisfy itself of these facts before receiving it, appears to be well settled.'

In discharging this duty to consider and pass upon the validity of the guilty plea, the trial judge must put on the record facts which indicate the status of the plea, as called for in Supreme Court Rule 1-11, (now Criminal Rule 10). Lockhart v. State (1971), 257 Ind. 349, 274 N. E. 2d 523. As we said in Campbell v. State (1951), 229 Ind. 198, 96 N. E. 2d 876:

> 'One of the reasons for the adoption of Rule 1-11 supra by this court is to provide an unimpeachable record showing the extent of the inquiry into the facts, circumstances and conditions made by the trial court to ascertain at the time whether the offered plea of guilty is made freely and understandingly. Without such record the trial court is, by its own volition, shorn of the procedural facts that might protect its judgment from attack.' 229 Ind. 202, 96 N. E. 2d 877.

The United States Supreme Court, in discussing a similar federal rule, held that the rule had two purposes, first to assist the district judge to make a constitutionally required determination that a defendant's guilty plea is truly voluntary, and second, to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. McCarthy v. United States (1969), 394 U.S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418.

The court in McCarthy reversed a conviction where the federal rule was not complied with holding that there is no adequate substitute for 'demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him.' (Emphasis added.) 394 U.S. at 470, 89 S. Ct. at 1173. In summing up their disposition of this case, the U.S. Supreme Court stated:

> 'Our holding that a defendant whose plea has been accepted in violation Rule 11 should be afforded the opportunity to plead anew not only will insure that every accused is afforded those procedural safeguards, but also will help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate. It is, therefore, not too much to require that, before sentencing defendant to years of imprisonment, district judges take the few minutes necessary to inform

them of their rights and to determine whether they understand the action they are taking.' 394 U.S. at 472, 89 S. Ct. at 1174.

This reasoning is persuasive and was given constitutional dimension in Boykin v. Alabama (1969), 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274, where the U.S. Supreme Court held that in order to satisfy the constitutional requirements of due process, the record of the entry of the plea must demonstrate a knowing and intelligent waiver by the accused of his constitutional rights. Since the Boykin case, presuming waiver from a silent record in a guilty plea case is impermissible.

In this case, the record is silent as to the discharging of the trial court's burden to determine that the guilty plea was properly entered. It is axiomatic that 'every reasonable presumption should and is indulged against a waiver of fundamental rights.' United States ex rel. Pierce v. Lane, 193 F. Supp. 395, 399 (D.C. Ind. 1961), rev. on other grounds, 302 F. 2d 38 (7 Cir. 1962). See also, Grubbs v. State (1970), 255 Ind. 411, 265 N. E. 2d 40; Johnson v. Zerbst (1938), 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461; Glasser v. United States (1941), 315 U.S. 60, S. Ct. 457, 86 L. Ed. 680. There is nothing in this record to indicate that the appellant was advised of his rights under the State and Federal Constitutions, and nothing to indicate that he intentionally and freely waived those rights."

We deem it significant that our Supreme Court placed a high value on the approved draft of the American Bar Association Project on Minimum Standards of Criminal Justice, Pleas of Guilty, since our Supreme Court included them verbatim in the *Brimhall* case. We will not burden this opinion by doing so.

In this case the record is absolutely silent as to any determination by the trial judge that there was a knowing and intelligent waiver of constitutional rights before the entry of a guilty plea.

We cannot presume such a waiver from a silent record. Boykin v. Alabama, *supra.*

In this case there is not even a minimal compliance with the standards set forth in *Brimhall.*

Therefore, this case must be and hereby is reversed and remanded to the trial court with instructions to grant the Petition for Post-Conviction Relief by setting aside the plea of guilty entered by the Appellant, proceeding to arraign the Appellant on the charge in the affidavit and for all other proceedings consistent with this opinion.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported in 283 N. E. 2d 795.