LARRY BONNER *v.* STATE OF INDIANA.

[No. 472A197. Filed June 27, 1973. Rehearing denied August 1, 1973.]

*Harriette Bailey Conn*, Public Defender of Indiana, *Carr L. Darden, Sr.*, Deputy Public Defender, for appellant.

*Theodore L. Sendak*, Attorney General, *Mark Peden*, Deputy Attorney General, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Petitioner-appellant Larry Bonner (Bonner) appeals from an adverse ruling by the Marion Criminal Court, Division Two, on his Petition For Post-Conviction Relief which claimed his guilty plea was not voluntarily and knowingly entered.

We reverse.

## FACTS

The record, when viewed most favorably to the State, reveals the following facts:

On April 20, 1971, an informant told the Indianapolis Police Department that he had purchased one capsule of heroin from Bonner. The police obtained an arrest warrant, arrested Bonner at his apartment and searched him and his apartment, but found no narcotics. He was then charged by Affidavit with two counts, Possession and Sale of Heroin.

On July 12, 1971, Bonner moved to withdraw his plea of not guilty and entered a plea of guilty to the charge of Possession, in return for which the State agreed to drop the Sale charge. The hearing was held in the Marion Criminal Court, Division Two, and a finding of guilty was entered on the Possession charge.

The record reveals that during the course of this hearing on July 12, 1971, the guilty plea was accepted by the trial judge without reference by him to Bonner's constitutional rights pertaining to the privilege against self-incrimination and the right to confront one's accusers. Nor were any other of his rights under the state or federal constitutions referred to, except his right to a jury trial. Reference was also made to the penalty exacted for the offense to which he was pleading guilty. Pertinent parts of the record of the guilty plea hearing are excerpted in the Decision portion of this opinion.

On July 22, 1971, the court sentenced Bonner to the Indiana Reformatory for not less than two, nor more than ten years. He alleged in his Post-Conviction Relief Hearing on October 29, 1971 that the guilty plea had been entered as a result of coercion and had not been "knowingly, intelligently, voluntarily, and willingly" entered. From the court's ruling against him this appeal is taken.

## ISSUES

The following issues are presented for review by this appeal:

ISSUE ONE.      Was Bonner's guilty plea entered voluntarily?

ISSUE TWO.      Was Bonner's plea entered knowingly with knowledge of the consequences of such a plea?

ISSUE THREE.    May it be assumed that Bonner was informed of the constitutional rights he was waiving by pleading guilty because he was represented by counsel, even though the record is silent as to any

waiver by him of his right against compulsory self-incrimination and the right to confront his accusers?

As to ISSUE ONE, Bonner asserts that his plea of guilty to the lesser Possession charge was coerced because had he not done so he might receive a more severe penalty if convicted of the Sale charge.

The State replies that fear of being convicted of a more serious charge does not render a guilty plea to a lesser offense involuntary.

As to ISSUE TWO, Bonner contends that the colloquy with the judge during his guilty plea was insufficient to apprise him of the constitutional rights being waived by the gulity plea and the consequences thereof. Even absent coercion, he argues, a plea may not be truly voluntary unless the accused is aware of the plea and the consequences thereof.

The State answers by saying that the record clearly illustrates that the guilty plea was knowingly entered and that Bonner had been fully informed of his rights.

As to ISSUE THREE, Bonner argues that the information which he must possess in order to make an intelligent plea of guilty must be conveyed to him by the trial court judge and in the record.

The State responds that when a defendant is represented by privately obtained counsel, the court may assume that he has been fully advised of the consequences of his plea, and therefore the court need not admonish him during the hearing.

## DECISION

ISSUE ONE.

CONCLUSION—It is our opinion that Bonner's guilty plea to the lesser Possession charge was entered voluntarily inasmuch as the mere "threat" of punishment for the greater Sale charge does not constitute coercion.

The contention that the threat of conviction of a greater crime will allow a defendant to void a guilty plea on the grounds of coercion has been recently rejected by no lesser authorities than the Supreme Courts of the United States and the State of Indiana. In *Brady* v. *United States* (1970), 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, the court stated:

> "We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." 397 U.S. 742, 751.

Similarly, the Indiana Supreme Court has held:

> "* * * the fears of the appellant brought about by the surrounding circumstances cannot be considered the type of coercion which would require the trial court to permit withdrawal of the guilty plea. Under the circumstances the appellant was simply placed in a situation where he was required to make a judgment as to the best course of action for him to take. We cannot say that his decision to plead guilty constituted an involuntary situation simply because of the existence of overwhelming evidence and the threat of a life sentence." *Lockhart* v. *State* (1971), 257 Ind. 349, 353-54, 274 N.E.2d 523, 526.

Consequently, Bonner's position is quite untenable.

So we proceed to examine the state of the law in the more complicated area of admonitions which must be given an accused at a guilty plea hearing.

ISSUE TWO.

CONCLUSION—It is our opinion that the transcript of Bonner's Guilty Plea Hearing indicates that he was not sufficiently advised of his state and federal constitutional rights so as to knowingly enter a plea of guilty with knowledge of the consequences thereof.

According to the United States Supreme Court in *Brady* v. *United States, supra* at 752, "* * * at present [1970] well

over three-fourths of the criminal convictions in this country rest on pleas of guilty * * *." So the guilty plea is a major cog in the criminal justice machinery.

Furthermore,

"A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. * * * More is not required, the court has nothing to do but give judgment and sentence." *Kercheval* v. *United States* (1927), 274 U.S. 220, 223, 47 S.Ct. 582, 583.

Thus the procedures surrounding a guilty plea are vital, not only because such a plea is an admission of guilt, but because of the finality of the action.

Judicial concern over an accused's understanding of his rights as they relate to a guilty plea is not a recent development. State and federal courts long ago expressed anxiety that an accused have full understanding of his plea:

"That a plea of guilty should be entirely voluntary, and made by one competent to know the consequences thereof, and that the trial court should satisfy itself of these facts before receiving it, appears to be well settled." *Mislik* v. *State* (1915), 184 Ind. 72, 76, 110 N.E. 551, 552.

In order to be valid and binding, a plea of guilty must be made intelligently, advisedly, and understandingly. *Harshman* v. *State* (1953), 232 Ind. 618, 620, 115 N.E.2d 501. See also: *Johnson* v. *Zerbst* (1938), 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461.

Recent developments in the area of guilty pleas are not the result of a new direction taken by the courts, but rather are a consequence of the courts' reaffirmation and redefinition of the traditional course.

The cardinal cases expounding the rights with which we must be concerned are the United States Supreme Court decision in *Boykin* v. *Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, and the unanimous Indiana Supreme Court decision in *Brimhall* v. *State* (1972), 258 Ind. 153, 279

N.E.2d 557. A discussion of the knowledge which an accused must have in order to plead guilty involves three areas of concern:

I. *The nature of the crime:*[1] does the accused understand the exact crime or crimes with which he is being charged—the elements which must be proved and how those elements relate to the facts of his conduct?

II. *The constitutional consequences:*[2] does the accused understand the rights automatically waived by a guilty plea, and the effect that such waiver has on the conduct of the judicial proceeding?

III. *The nature of the punishment:*[3] does he understand

---

1. The ABA Standards for Criminal Justice, Pleas of Guilty, provide: "1.4 Defendant to be advised by court.
The court should not accept a plea of guilty or nolo contendere from a defendant without first addressing the defendant personally and
  (a) determining that he understands the nature of the charge;
  * * *"
A soon-to-be effective portion of the Proposed Indiana Code of Criminal Procedure provides in Sec. 3:
"Sec. 3. DEFENDANT TO BE ADVISED BY COURT.—The court shall not accept a plea of guilty from the defendant without first addressing the defendant and
  (a) determining that he understands the nature of the charge against him;
  * * *"
2. Although inapplicable at the time Bonner's guilty plea was entered, a recently enacted Section of the Proposed Indiana Code of Criminal Procedure, Sec. 3, is worthy of attention because it affirms that the source of this section was "merely a codification of constitutional principles well established in the cases."
In pertinent part it reads:
"Sec. 3. DEFENDANT TO BE ADVISED BY COURT.—The court shall not accept a plea of guilty from the defendant without first addressing the defendant and
  * * *
  (c) informing him that by his plea of guilty he waives his rights to a public and speedy trial by jury, to face the witnesses against him, to have compulsory process for obtaining witnesses in his favor and to require the state to prove his guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself;
  * * *"
3. The same Sec. 3 referred to in footnotes 1 and 2 provides in subparagraph (d):
"(d) informing him of the maximum possible sentence and minimum sentence for the offense charged and of any possible increased sentence by reason of the fact of a prior conviction or convictions, and of any possibility of the imposition of consecutive sentences."

the minimum, mandatory minimum, maximum, consecutive sentences that he may receive when convicted of the crime?

Because we decide this case on the ground that the record does not reveal Bonner's plea was entered understandingly, with knowledge of the consequences of his plea, no discussion is necessary of an accused's understanding of the nature of the crime or of the punishment for that crime.

## THE CONSTITUTIONAL CONSEQUENCES OF A GUILTY PLEA

On June 2, 1969, the landmark case of *Boykin* v. *Alabama, supra,* decided that the record must affirmatively show an effective waiver by an accused of his federal constitutional rights so that the guilty plea entered is "intelligent and voluntary." In fastening on the states the rule that in order for an accused entering a guilty plea to effectively waive his federal constitutional rights, the record must affirmatively show such waiver as a requirement of the Due Process Clause of the Fourteenth Amendment, the United States Supreme Court said:

> "*Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First,* is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. *Malloy* v. *Hogan,* 378 U.S. 1. *Second,* is the right to trial by jury. *Duncan* v. *Louisiana,* 391 U.S. 145. *Third,* is the right to confront one's accusers. *Pointer* v. *Texas,* 380 U.S. 400. *We cannot presume a waiver of these three important federal rights from a silent record.*" *Boykin* v. *Alabama, supra* at 243. (Emphasis supplied.)

So federal law requires that in order to be an effective waiver of the three delineated federal constitutional rights of a defendant entering a guilty plea, *the record must affirmatively show such waiver.*

Justice Harlan, joined in dissent by Justice Black, remon-

strated against the fact that neither in the state nor federal court proceedings did the defendant, or counsel representing him, contend that the guilty plea was involuntary or more without knowledge of the consequences. Justice Harlan characterized the sua sponte action of the majority in reaching their conclusion a bizarre result—a problem which does not exist in the case before us.

The requirement of *Boykin* that the three important federal constitutional rights of, first, the privilege against compulsory self-incrimination, second, the right to trial by jury, and third, the right to confront one's accusers, is akin to Article 1, § 13 of our Indiana Constitution, which provides:

> "§ 13. RIGHTS OF ACCUSED.—In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor."

Judge Sharp, of the Third District of this court, recently cited Article 1, § 13 in reversing a conviction where the defendant entering a guilty plea was not advised of his constitutional rights, including his right to have counsel to represent him:

> "A plea of guilty is in itself a conviction. It must therefore be made by the accused freely and understandingly so that the rights afforded under Article 1, Section 13 of the Indiana Constitution can be deemed *intelligently waived*." (Original emphasis.) *Lovera* v. *State* (1972), 152 Ind. App. 377, 383, 283 N.E.2d 795, 798. *Boykin* was cited and relied on in this opinion.

In *Dube* v. *State* (1971), 257 Ind. 398, 275 N.E.2d 7, the Indiana Supreme Court reversed a conviction which was based on a guilty plea entered before the *Boykin* decision, in which it recognized the importance of these constitutional rights:

> "Several very important constitutional rights are waived by a defendant when he pleads guilty, including the right against self-incrimination and the right to a trial by a jury

of his peers. When a waiver of these important rights occurs we must scrutinize the situation closely to make certain that the waiver was freely, knowingly, and voluntarily made with full knowledge of the consequences." *Dube, supra* at 402, 275 N.E.2d at 9. See also: *Thacker* v. *State* (1970), 254 Ind. 665, 262 N.E.2d 189; *Campbell* v. *State* (1951), 229 Ind. 198, 96 N.E.2d 876.

*Brimhall* v. *State, supra,* decided March 9, 1972 by a unanimous Supreme Court, recently accentuated the need for the record to affirmatively show an intelilgent waiver of an accused's constitutional rights when making a guilty plea:

"There is nothing in this record to indicate that the appellant was advised of his rights under the State and Federal Constitutions, and nothing to indicate that he intentionally and freely waived those rights." *Brimhall, supra* at 165, 279 N.E.2d at 564.

The exact state and federal constitutional rights that must appear in the record are not defined, but there is obvious reliance on *Boykin:*

"This reasoning is persuasive and was given constitutional dimension in *Boykin* v. *Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, where the U.S. Supreme Court held that in order to satisfy the constitutional requirements of due process, *the record of the entry of the plea must demonstrate a knowing and intelligent waiver by the accused of his constitutional rights.* Since the *Boykin* case, *presuming waiver from a silent record in a guilty plea case is impermissible." Brimhall, supra* at 164-65, 279 N.E.2d at 564. (Emphasis supplied.)

Granted, then, that waiver of constitutional rights must be "knowing and intelligent," or, as stated in *Harshman* v. *State* (1953), 232 Ind. 618, 620, 115 N.E.2d 501, 502, a plea of guilty must be entered "intelligently, advisedly and understandingly, with full knowledge of his rights, and with the considered approval of the judge before whom he stands charged", does the record before us reflect that Bonner was sufficiently informed? A waiver of these rights cannot be presumed from "a silent record." *Boykin* v. *Alabama, supra; Brimhall* v. *State, supra; Lovera* v. *State, supra.*

Recently the Supreme Court of Michigan required that the record must reveal separate and individual admonishment as to *each* of the accused's rights under these circumstances:

"There is no apparent logic why if three rights were involved, it would serve to advise the defendant of only one or two, because the purpose is to enable the defendant to make an intelligent and understanding decision. It is hard to argue that making a decision based on one third or two thirds of the facts, assuming knowledge of these rights would have equal impact, is intelligent; it certainly is not understanding. One thinks irresistibly of the common term 'half-baked opinion.'" *People* v. *Jaworski* (1972), 387 Mich. 21, 194 N.W.2d 868, 871. See also: *In Re Tahl* (1969), 1 Cal.3rd 122, 81 Cal.Rptr. 577, 460 P.2d 449, cert. denied, 398 U.S. 911; *Nachtigal* v. *Erickson* (1970), 85 S.D. 122, 178 N.W.2d 198; *State ex rel. Jackson* v. *Henderson* (1971), 260 La. 90, 255 So.2d 85.

The principle that a Defendant must be advised of each of his constitutional rights when entering a guilty plea is akin to the specificity required in pre-interrogation warnings by *Miranda* v. *Arizona* (1966), 384 U.S. 436, 472. Particularity and certainty as to the precise constitutional rights waived would seem equally requisite to uttering custodial incriminating statements and open court confessions of guilt. See *Goodloe* v. *State* (1969), 253 Ind. 270, 252 N.E.2d 788.

In discharge of his burden to establish grounds for post-conviction relief required by Rule PC. 1, § 6, Bonner presents a record of the guilty plea hearing which is devoid of any reference to his right to confront his accusers and his right against compulsory self-incrimination.

Relevant portions of the record are:

"Mr. FASIG: Your Honor, at this time, the Defendant, Larry Bonner, would ask leave to withdraw his former plea of Not Guilty, and enter a plea of Guilty to Count Two, I believe it is, the one that's possession of narcotics.
THE COURT: Does the State consent?
MR. HOWARD: Yes, Your Honor.
THE COURT: Defendant moves for leave to withdraw

former plea of Not Guilty, and asks leave to plead Guilty to Count Two, to which the State of Indiana consents. Right hands, everybody.

WITNESSES SWORN

THE COURT: Come up here, Mr. Bonner, so I can talk to you a little bit. You're here with a very good lawyer, but the Supreme Court says that I have to talk to you about your Constitutional Rights, do you understand?

DEF. BONNER: Yes, sir.

THE COURT: So, you listen to me, and when I'm talking to you, I'm not trying to talk you into pleading Guilty or talk you out of it, do you understand, but I just have to tell you your rights. Do you know what a jury is, jury trial?

DEF. BONNER: Yes.

THE COURT: Twelve people who sit over there. You're entitled to a jury trial, if you plead Not Guilty. Do you want a jury, twelve people? Do you want that?

DEF. BONNER: I'm mixed up.

THE COURT: What do you mean, you're mixed up? Your lawyer says you want to plead Guilty to possession. Do you?

MR. FASIG: Do you want to think about it a little more? You've got to be sure.

THE COURT: If you're mixed up, I don't want to talk to you. Have you got a wife? Is that your wife, the girl there?

DEF. BONNER: Yeah.

MR. FASIG: Would you like to think a little more?

DEF. BONNER: Well, I just—I'm going to get it over with. I've never been in trouble . . .

MR. FASIG: Now, don't talk that line of talk, just . . .

THE COURT: Talk real loud to me, now.

MR. FASIG: The Judge asked if you want a jury.

DEF. BONNER: No.

THE COURT: Do you know what a jury is?

DEF. BONNER: Yeah.

THE COURT: Did anybody make you plead Guilty? Did Mr. Fasig force you to?

DEF. BONNER: No.

THE COURT: Did your wife?

DEF. BONNER: No.

THE COURT: Did your mother?

DEF. BONNER: No.

THE COURT: Did this little girl? What's your relationship?

DEF. BONNER: Sister in law.

THE COURT: Take a look at that fellow with the blue shirt, do you know him?

DEF. BONNER: Yeah.

THE COURT: Did he make you plead Guilty?

DEF. BONNER: No, he didn't.

THE COURT: How about the fellow over there, with the funny shirt?

DEF. BONNER: No, he didn't.

THE COURT: Did he make you plead Guilty?

DEF. BONNER: No.

THE COURT: And that fellow over there, Caine, he's just a chemist, so he had nothing to do with you, did he?

DEF. BONNER: No.

THE COURT: How about that prosecutor, who's sitting down and the intern is standing up, did they make you plead Guilty?

DEF. BONNER: No, sir.

THE COURT: Are you doing this all on your own?

DEF. BONNER: Yes, sir.

* * *

THE COURT: * * * All right, Bonner, you've been sitting in jail how long?

DEF. BONNER: Approximately I would say, about three weeks.

THE COURT: Would you like to do two to ten years?

DEF. BONNER: No, I wouldn't.

THE COURT: Would you like to have it hanging over your head?

DEF. BONNER: I can't quite understand you.

THE COURT: Well, you sell insurance, you ought to understand me. How would you like to have two to ten years hanging over your head; in case you do something wrong you're going to do that two to ten. Or do you think you could behave yourself, with that nice wife and children, and nice mother? Why're you hesitating about saying that you won't behave?

DEF. BONNER: I know I can, because I made up my mind . . .

THE COURT: Well, then you shouldn't care if that two to ten hung over your head, should you?

DEF. BONNER: No, definitely not.

THE COURT: You know that if I should suspend the sentence here, which I don't know yet, you understand, that two to ten will hang over your head for ten years, and if you do anything wrong, you do that two to ten years. Are you willing to take that chance?

DEF. BONNER: Yes, I am."

The only constitutional right which the trial court informed Bonner that he was waiving was his right to a jury trial. The "waiver" may be found in the passage:

"MR. FASIG: (Counsel) The Judge asked if you want a jury.

DEF. BONNER: No.

THE COURT: Do you know what a jury is?

DEF. BONNER: Yeah."

But it should also be noted that earlier, when he was asked whether he wanted a jury, Bonner replied: "I'm mixed up." No inquiry was undertaken by the trial court to determine exactly the source of Bonner's confusion. Thus, Bonner's "waiver" of his right to a jury trial is of questionable validity.

More significant, however, is the complete absence of any instruction or indication of a waiver by Bonner as to *his right to confront his accusers and his right against compulsory self-incrimination.* His right to confront his accusers would seem particularly important in that an unnamed informer would be unavailable for questioning by him.

Assuming, without deciding, that Bonner was informed of his federally guaranteed right to a jury trial, he was not instructed by the court, nor does the record reveal that he otherwise knowingly waived his other federal constitutional rights against compulsory self-incrimination and the right to confront his accusers, which we interpret as the minimum requirements binding on state courts by *Boykin.* Two of the three

links in the chain of federally guaranteed constitutional rights are missing.

Therefore, Bonner's conviction must be reversed on this basis without more.

There is a second string to this bow, however, which compels reversal. *Brimhall* holds that a conviction grounded on a guilty plea may not stand if the record fails "to indicate that the appellant [accused] was advised of his rights under the *State* and Federal Constitutions, and nothing to indicate that he intentionally and freely waived those rights." While the unanimous court speaking through Justice DeBruler was not specific as to the state constitutional rights involved, there is duplication between the three federal constitutional rights enumerated in *Boykin* and Article 1, § 13 of the Indiana Constitution in that both refer to a jury trial and an accused's right to confront his accusers ("to meet the witnesses face to face, * * *", Article 1, § 13, Indiana Constitution).

So, as the record is silent as to a knowing waiver by Bonner of his privilege against compulsory self-incrimination, contrary to *Boykin,* and is silent as to his right to confront his accusers, contrary to both *Boykin* and Article 1, § 13 of the Indiana Constitution, reversal is mandatory. Beyond these minimum requirements we need not go to decide this case.

A self declared transgressor against society's law no less than any other citizen is entitled to a modicum of constitutional protection as he awaits his fate before the bar of justice.

Justice Frankfurter in *McNabb* v. *United States* (1943), 318 U.S. 332, 347, put it succinctly:

"The history of liberty has largely been the history of observance of procedural safeguards."

ISSUE THREE.

CONCLUSION—It is our opinion that because the record is silent as to any waiver by Bonner of his specific constitutional rights against compulsory self-incrimination and to

confront his accusers, it may not be presumed that he knowingly waived them because counsel represented him when entering his guilty plea.

The essence of the holding in *Boykin* is that "[W]e cannot presume a waiver of these three important federal rights from a silent record." Boykin had counsel of record, both in the Alabama proceedings and in those before the United States Supreme Court. Implicit in this holding is that counsel or no counsel, a waiver of important federal constitutional rights will not be presumed from a silent record. It must affirmatively show that an accused has knowingly waived these rights. In this area federal law is supreme and any Indiana cases implying otherwise must yield. *Douglas* v. *Alabama* (1965), 380 U.S. 415, 85 S.Ct. 1074; *Boykin* v. *Alabama, supra.*

Brimhall also had counsel of record when entering his guilty plea, and there is no statement or implication that counsel was inadequate. Although Brimhall was represented by counsel, the court said:

"Because of the grave nature of a guilty plea, the trial court has a duty to closely scrutinize the situation and be sure that the offered plea is freely and understandingly given, * * *."

and

"In discharging this duty to consider and pass upon the validity of the guilty plea, the trial judge must put on the record * * *." *Brimhall, supra* at 162, 163, 279 N.E.2d at 563-64.

A majority of our sister jurisdictions have held that:

"* * * a sentencing court may not abrogate or delegate to anyone, including attorney for accused, the duty to determine defendant's knowledge of the charge, appreciation of legal consequences of a guilty plea, whether it is voluntarily entered, or existence of facts supporting it." *State* v. *Sisco,* (Iowa 1969), 169 N.W.2d 542, 548.

In accord: *State* v. *Braeutigan* (1971), 107 Ariz. 405, 489 P.2d 42; *In Re Tahl* (1969), 1 Cal. 3rd 122, 81 Cal. Rptr.

577, 460 P.2d 449, *cert. denied,* 398 U.S. 911; *Westendorf* v. *People* (1970), 171 Colo. 123, 464 P.2d 866; *State* v. *Bugbee* (1971), 161 Conn. 531, 290 A.2d 332; *Clark* v. *State* (Fla. App. 1972), 256 So.2d 551; *Hamm* v. *State* (1970), 123 Ga. App. 10, 179 S.E.2d 272; *People* v. *Weakley* (1970), 45 Ill.2d 549, 259 N.E.2d 802; *Wilson* v. *State* (Me. 1970), 268 A.2d 484; *Duvall* v. *State* (1968), 5 Md. App. 484, 248 A.2d 401; *People* v. *Butler* (1972), 387 Mich. 1, 195 N.W.2d 268; *State* v. *Blaylock* (Mo. 1965), 394 S.W.2d 364; *Brown* v. *Warden* (1972), 88 Nev. 166, 494 P.2d 959; *Neller* v. *State* (1968), 79 N.M. 528, 445 P.2d 949; *State* v. *Ford* (1972), 281 N.C. 62, 187 S.E.2d 741; *Day* v. *Page* (Okla. Cr. 1968), 436 P.2d 59; *Commonwealth* v. *Belgrave* (1971), 445 Pa. 311, 285 A.2d 448; *Bishop* v. *Langlois* (1969), 106 R.I. 56, 256 A.2d 20; *Nachtigall* v. *Erickson* (1970), 85 S.D. 122, 178 N.E.2d 198; *Ex Parte Battenfield* (Tex. Cr. App. 1971), 466 S.W.2d 569; *Woods* v. *Rhay* (1966), 68 Wash. 2d 601, 414 P.2d 601, *cert. denied,* 385 U.S. 905; *State* v. *Harrel* (1968), 40 Wis. 2d 187, 161 N.W.2d 223.

In *Brady* v. *United States* (1970), 397 U.S. 742, 90 S. Ct. 1463, 25 L.Ed.2d 747, after stating that Brady had been advised by competent counsel, the United States Supreme Court held:

> "* * * Our view * * * is based on our expectations that *courts will satisfy themselves* that pleas of guilty are voluntarily and intelligently made by competent defendants with adequate advice of counsel * * *." *Brady, supra* at 758. (Emphasis supplied.)

Collateral support for the proposition that presence of counsel does not fill the void created by a silent record as to waiver of fundamental constitutional rights is provided by the ABA Standards for Guilty Pleas and that portion of the Proposed Indiana Code of Criminal Procedure recently enacted by the Legislature. Each affirms the assignment of this responsibility to the judge with identical language, "Defendant

to be advised by court."[4] Neither reveals any indication that defendant's counsel may relieve the court of the responsibility thus imposed.

If the trial court judge makes these admonitions on the record, he "forestalls the spin-off of collateral proceedings that seek to probe murky memories." *Boykin*, at 244.

Counsel for the State argue that the decision of the Indiana Supreme Court in *Conley* v. *State* (1972), 259 Ind. 29, 284 N.E.2d 803, abrogates the responsibility of the trial court judge in cases where the accused is represented by counsel, *i.e.*, where the record is silent. While *Conley* was decided July 13, 1972, after the decision in *Brimhall* (March 9, 1972), Conley's conviction occurred on or before May 5, 1969, some weeks *before* the United States Supreme Court's decision on June 2, 1969 in *Boykin*, a circumstance recognized in footnote one of the *Conley* decision. *Conley* found that *Boykin* was *not* to be given retroactive effect. The decision of the Indiana Supreme Court in *Brimhall* on March 9, 1972 applied to a crime and conviction occurring after *Boykin*.

Indiana Rule CR. 10, which requires that a guilty plea be recorded and transcribed in the same form as the transcript of evidence in a trial, implicitly places on the trial judge the responsibility of informing the accused of his constitutional rights. This implication was made explicit by the Indiana Supreme Court as early as 1951:

> "One of the reasons for the adoption of Rule 1-11, *supra,* by this court is to provide *an unimpeachable record showing the extent of the inquiry into the facts, circumstances and conditions made by the trial court to ascertain at the time whether the offered plea of guilty is made freely and understandingly.* Without such record the trial court is, by its own volition, shorn of the procedural facts that might protect its judgment from attack." *Campbell* v. *State* (1951), 229 Ind. 198, 202, 96 N.E.2d 876, 877. (Emphasis supplied.)

---

4. ABA Standards § 1.4 and IC 1971, 35-4.1-1-3. For a discussion of alternative methods of presentation, see Judge S. Hugh Dillin, "Mass Pre-Arraignment by Film," 17 Res Gestae 6 (March 1973).

*Boykin* and *Brimhall* in our opinion retain their vitality and govern this case. Our holding is limited, however, to the conclusion that because the record is silent as to any waiver by Bonner of his specific constitutional rights against compulsory self-incrimination and to confront his accusers, it may not be presumed that he knowingly waived them because counsel represented him when entering his guilty plea.

Therefore this case is reversed and remanded to the trial court with instructions to grant Bonner's Petition For Post-Conviction Relief.

White, J., concurs; Sullivan, J., dissents with separate opinion.

### DISSENTING OPINION

SULLIVAN, J. —I respectfully dissent.

Prior to the filing of his Post-Conviction Petition, Bonner did not at any time file or otherwise seek to have his guilty plea withdrawn so as to enter a not guilty plea. I do not, however, premise my dissent upon the possible waiver by Bonner of any question with respect to the guilty plea since the State did not at the Post-Conviction stage assert waiver as a defense. See *Langley* v. *State* (1971), 256 Ind. 199, 267 N.E.2d 538. Rather, I disagree upon the basis that Petitioner below has not demonstrated that his guilty plea was not knowingly and understandingly made.[1] The burden in this regard is upon him. PC. Rule 1 § 5; *Conley* v. *State* (1972), 259 Ind. 29, 284 N.E.2d 803; *Lenwell* v. *State* (1973), 156 Ind. App. 41, 294 N.E.2d 643.[2]

I have no hesitation in accepting the basic premise, as enunciated by the majority, that the trial court should be

---

1. The majority has correctly, I think, disposed of appellant's argument that the guilty plea was coerced and was thus involuntary.
2. The placing of the burden upon the Petitioner is entirely consistent with the ABA Standards Relating to Post-Conviction Remedies. Section 4.6(d) of those Standards reads in part as follows:

"Ordinarily, the proponent of factual contentions, whether the applicant's proof of the elements of a prima facie case or the respondent's proof of affirmative defenses, should have the burden of establishing those facts by a preponderance of evidence."

very specific in its dialogue with a defendant concerning knowledgeable waiver of the three constitutional rights delineated in *Boykin* v. *Alabama* (1969), 395 U.S. 238, 89 S. Ct. 1709, *i.e.*, (1) the privilege against self incrimination; (2) the right to trial by jury; and (3) the right to confront one's accusers. I further agree that in order to avert PC. proceedings which clog the dockets of trial courts and appellate courts alike, the court in accepting a guilty plea would be particularly well advised to make a complete record with respect to the matters discussed with the defendant. Without regard to the obvious dictates of *Boykin*, the ABA Standards (which I believe were here met), and the soon to be effective § 3 of the Code of Criminal Procedure adopted by the 1973 Indiana General Assembly as referred to by the majority, it is only common sense that the trial court in accepting the plea, interrogate the defendant extensively with respect to voluntariness, knowledge of his constitutional rights, awareness of the nature of the charge and of the possible penal consequences. Compare *Conley* v. *State, supra,* and *Huff* v. *State* (1972), 154 Ind. App. 542, 290 N.E.2d 508, an appeal from denial of relief under PC. Rule 2.

The fact remains, however, that neither *Brimhall* v. *State* (1972), 258 Ind. 153, 279 N.E.2d 557, cited by the majority, nor *Boykin* v. *Alabama, supra,* arose out of denial of post-conviction relief. It is the further fact that Appellant-Petitioner has not here claimed that he was not aware of the nature of the charge against him, that he did not knowingly waive the constitutional rights enunciated in *Boykin,* or that he did not know the penal consequences of his plea. The essence and the be-all, end-all of his position is that the record of his guilty plea proceeding did not reflect a specific interrogation as to these matters.

The Petitioner-Appellant's Motion to Correct Error is even more limited than the argumentative position assumed in his brief. The Motion to Correct Errors is solely premised upon an assertion rejected by the majority, *i.e.*, the alleged coercive

nature of the plea by reason of the "threat of suffering the greater penalty" unless he pled guilty to the offense for which a lesser penalty was prescribed. The Post-Conviction Petition itself insofar as we are here concerned, alleges merely that Petitioner was "entrapped and pressured into entering his guilty plea."

There is a substantial difference between a plea not entered voluntarily and one not entered knowingly and intelligently. See *Schneckloth* v. *Bustamonte* (1973), 412 U.S. 218, 93 S. Ct. 2041, 41 U.S. Law Week 4726, 4732 at footnote 25. Thus, an allegation that a guilty plea was coerced and was therefore not voluntary does not present any reviewable issue with regard to whether the plea was made knowingly and intelligently.

Upon the facts before us and in view of the arguments presented by Petitioner-appellant, I believe that as in *Conley, supra:*

"Without an allegation and showing of ineffective counsel in this case, we must conclude that Conley's attorney provided full and adequate assistance, which would include consultation regarding the defendant's constitutional rights and the gravity of his offense.

We must conclude that the trial court was correct in finding against the appellant and that he failed to sustain his burden of proof that he was misinformed, that he was deceived or that he did not understand the plea and its consequences. The appellant did not take the stand to deny the record or support the contentions made in the briefs and at the Rule P. C. 1 hearing. The rule under which this proceeding was brought places upon the petitioner the burden of making out his case by a preponderance of the evidence. Rule P. C. 1(5). The creation of a mere ambiguity or uncertainty in the evidence cannot be characterized as sustaining the burden of proof by a preponderance thereof. On the contrary, there is no allegation of inadequacy on the part of his attorney and there is no proof in the record of such a condition." (284 N.E.2d 803, 809)

Absent an allegation and evidence to the contrary, it is improper for us to presume that petitioner's counsel did not perform his responsibilities to his client prior to and at

the proceeding at which his guilty plea was entered. As stated in *Blackburn* v. *State* (1973), 260 Ind. 5, 291 N.E.2d 686:

> " '[T]here is a presumption that an attorney has discharged his duty fully, and it requires strong and convincing proof to overcome this presumption.' "

As heretofore stated, Bonner neither alleged nor did he prove by a preponderance of evidence that he was unaware of the constitutional consequences of his guilty plea. I would, therefore, affirm.

NOTE.—Reported at 297 N.E.2d 867.