STEVEN WAYNE WILLIAMS & ALBERT L. WILLIAMS *v.*
STATE OF INDIANA.

[No. 874S154. Filed April 16, 1975. Rehearing denied June 19, 1975.]

166

*Harriette Bailey Conn*, [*Mrs.*], Public Defender of Indiana, *Bruce H. Klang*, Deputy Public Defender, for appellants.

*Theodore L. Sendak*, Attorney Genreal, *Walter F. Lockhart*, Deputy Attorney General, for appellee.

HUNTER, J.—Petitioners appeal from the denial of their petition for post-conviction relief, seeking withdrawal of their pleas of guilty to first degree murder.

On January 19, 1973, petitioners were preliminarily charged with first degree murder and had counsel appointed at that

time. Thereafter, petitioners, with counsel, were present when the Grand Jury of Elkhart County returned formal indictments. On January 26, 1973, petitioners waived arraignment on the formal charge and entered pleas of guilty to first degree murder. During this proceeding, the court addressed petitioners only once, asking them their ages. The court made the following entry:

> THE COURT: "In this number, 'Defendants in court in person and by Robert B. Hartzog, their attorney. Each files a statement showing that he understands all of his rights and is satisfied with counsel appointed to represent him. Finding that the defendant Steven Wayne Williams is guilty as charged; that he is 23 years of age. Sentence deferred pending investigation and report by the Probation Officer.
>
> " 'Finding that Albert L. Williams is 28 years of age; that he is guilty as charged. Sentence deferred pending investigation and report by the Probation Officer.
>
> " 'Said defendants ordered held in custody pending said investigation.' "

The statements referred to by the trial court in its entry were forms prepared by the prosecutor. These forms were read to and completed for petitioners by defense counsel. Each form bore the following general information: defendant's name, the place and date of his birth, years of formal education and a statement that defendant could read, write, and understand the English language. The form advised each petitioner that he was charged with first degree murder and that the penalty upon conviction was life imprisonment. The form further stated:

> "5. I understand that I am entitled to have my rights explained to me and that I have the right to have any questions I may have answered for me.
>
> "6. I understand that I have the following rights: (a) the right to a speedy and public trial; (b) the right to a jury trial; (c) the right to be released on reasonable bail until trial; (d) the right to use the power of the court to compel production of any evidence including the attendance of wit-

nesses in my favor; (e) the right to see and hear all the witnesses against me and to question them at trial; (f) the right to the assistance of a lawyer at every stage of the proceeding against me, and (g) the right to appeal any conviction in this court to a higher court. I understand that I have the right to remain silent and that the burden is on the state to prove me guilty beyond all reasonable doubt.

"7.  I understand that I have a right to be defended in this case by a lawyer. I have the right to employ the lawyer of my choice to defend me. I also understand that if I cannot afford to employ a lawyer, the court will provide a lawyer for me in this case. I further understand that I have a right to have a lawyer provided by the court even if I am guilty of the offense charged.

"8.  I declare that no person, including the court, the prosecuting attorney and the police officers and sheriff's deputies with whom I have talked, has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I would receive any favors, special treatment or any other form of leniency if I would decide not to have a lawyer defend me in this case.

"9.  I believe and feel that I fully understand the proceedings in this case against me and I understand my right to be represented by a lawyer."

Each form continued with the following statement written by defense counsel:

"The Court has appointed Robert B. Hartzog to represent me. I have had sufficient time to go over the charge with him. I understand all of my rights and state to him I am guilty as charged, that I gave a full confession and that the same is true in substance in fact and have requested that said attorney enter a plea of guilty and that sentence be pronounced as soon as possible. I am satisfied with my attorney in this case."

Immediately following this statement on each form, there appears the signature of the petitioner named therein.

Prior to accepting petitioners' guilty pleas, the court heard the following evidence:

MR. PETERSON [Deputy Prosecuting Attorney]: "Criminal Cause, Your Honor, No. 6916."

MR. HARTZOG: "Your Honor, we are here today on an arraignment. Again, I have gone over it with Albert and Steven and have presented them with a written form, that Don oftens uses, on their rights. In the case of Steven Wayne Williams, he was born on January 17, 1950 at New Madrid, Missouri; he had a tenth grade education, and in addition, he did some studying in the Army, and he had no report on that. He is aware that he is charged with first degree murder, and he understands that the penalty which may be imposed is life imprisonment; he understands and has signed this statement, that the Court has appointed me to represent him; that I have had sufficient time to go over the charge with him; that he understands all of his rights and states to me that he is guilty as charged, and that he gave a full confession, and that the same is true in substance and in fact, and has requested me, as his attorney, to answer a plea of guilty, and that sentence be pronounced as soon as possible, and that he is satisfied with me as his attorney in representing him here today.

"And the same, Your Honor, is true with Albert Lewis Williams, with the exception that Albert Lewis Williams was born 7-20-44, also born in New Madrid, Missouri, and he is a high school graduate. He also understands that it is murder-one. He understands that it is life imprisonment. And he also signed the same statement and also makes a request that we waive arraignment and enter a plea of guilty. I realize the Court must refer this to probation for an investigation and report back to the Court. And he also requests that this be done as soon as possible.

"I have explained to them, Your Honor, that at the time of sentencing, it will be necessary that they do take the stand. They prefer not to, Your Honor. I told them that the Court would be very fair in his questions to them, and I am quite sure would hold it to the minimum, but it was necessary that they did understand all of their rights and that they be given every break that the law can give them under the circumstances.

"Now, is that true, Albert and Steve, that this is what we went over?"

ALBERT WILLIAMS: "Yes, sir."

STEVEN WILLIAMS: "Yes, sir."

MR. HARTZOG: "And this is your desire at this time, to waive arraignment and enter a plea of guilty? In your

case, Steve, to the charge of first degree murder, and yours, Albert, also to the charge of first degree murder.

"Is that correct?"

STEVEN WILLIAMS: "Yes, sir."

ALBERT WILLIAMS: "Yes, sir."

MR. PETERSON: "These forms that Mr. Hartzog showed you—did they sign —"

MR. HARTZOG: "Yes, they did, at the bottom."

MR. PETERSON: "Albert Williams, is that your signature on the form here?"

A. "Yes, sir."

Q. "And you understand that form thoroughly, through your attorney, Mr. Hartzog?"

A. "Yes, sir."

Q. "And you are waiving arraignment, by yourself, and entering a plea of guilty to first degree murder?"

A. "Yes, sir."

Q. "And do you understand what that charge was, fully?"

A. "Yes."

Q. "And the sentence provided?"

A. "Yes, sir."

MR. PETERSON: "I believe I will put that one in evidence, your Honor.

Q. "Steven Williams, is this your signature here?"

A. "Yes."

Q. "And you signed that in the presence of your attorney, Mr. Hartzog. Is that correct?"

A. "Yes."

Q. "And you are waiving any further arraignment and entering a plea of guilty to first degree murder. Is that true?"

A. "Yes."

Q. "You understand from this leaflet and what Mr. Hartzog told you all of your legal rights and constitutional rights?"

A. "Yes, sir."

Q. "You understood that?"

A. "Yes, sir."

Q. "Knowing that, you are entering a plea of guilty?"
A. "Yes."
Q. "Of your own free will?"
A. "Yes."
THE COURT: "And you are how old, Steven Wayne Williams?"
A. "23."
MR. ALBERT L. WILLIAMS: "And I am 28."
THE COURT: "And Albert is 28?"
MR. ALBERT WILLIAMS: "Yes."

On February 8, the trial court heard testimony establishing the corpus delecti, received petitioners' extra-judicial confessions, entered judgment and sentenced petitioners to life imprisonment.

The single issue presented by this appeal is whether petitioners' guilty pleas were entered knowingly, intelligently and voluntarily when the record of the guilty pleas proceeding demonstrates that petitioners were advised of their rights under *Boykin* v. *Alabama,* (1969) 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274, by defense counsel but not by the trial court.

The entry of a plea of guilty in state court proceedings entails a waiver of three important federal constitutional rights. As stated in *Boykin,* the first of these rights:

". . . is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy v. Hogan, 378 US 1, 12 L Ed 2d 653, 84 S Ct 1489. Second, is the right to trial by jury. Duncan v. Louisiana, 391 US 145, 20 L Ed 2d 491, 88 S Ct 1444. Third, is the right to confront one's accusers. Pointer v. Texas, 380 US 400, 13 L Ed 2d 923, 85 S Ct 1065." 395 U.S. 238, 243, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274, 279.

The waiver of these federal rights may not be presumed "from a *silent* record." 395 U.S. 238, 243, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274, 279-80 (emphasis added).

The definition of a *silent* record is the threshold question critical to the determination of petitioners' appeal. Any conclusion as to the meaning of that term must be predicated upon the ultimate holding in *Boykin,* i.e.:

"[T]here was reversible error 'because the record does not disclose that the defendant voluntarily and understandingly entered his pleas of guilty.'" 395 U.S. 238, 244, 89 S. Ct. 1709, 1713, 23 L. Ed. 2d 274-280.

This holding does not state that a guilty plea is constitutionally defective when the record fails to disclose that the judge advised defendant of his constitutional rights even though evidence in the record demonstrates that defendant was advised of each of the rights enumerated in *Boykin.* If *Boykin* had expressly so held, there would be no doubt that the record in this case would be silent, for the judge did not affirmatively advise petitioners of their rights.

We recognize that some portions of *Boykin* may implicitly suggest the rule which the express holding does not mandate: i.e., the trial court must advise a defendant of the federal rights enumerated in *Boykin,* regardless of any other evidence in the record. Consider, for example, the following excerpts:

"So far as the record shows, the *judge* asked no questions of petitioner concerning his plea, and petitioner did not address the court." 395 U.S. 238, 239, 89 S. Ct. 1709, 1710, 23 L. Ed. 2d 274, 277 (emphasis added).

"From the order affirming the trial court, three justices dissented on the ground that the record was inadequate to show that petitioner had intelligently and knowingly pleaded guilty. The fourth member concurred separately, conceding that '*a trial judge* should not accept a guilty plea unless *he* has determined that such a plea was voluntarily and knowingly entered by the defendant,' but refusing '[f]or aught appearing' 'to presume that the *trial judge* failed to do his duty.' 281 Ala, at 662, 663, 207 So 2d, at 414, 415. We granted certiorari. 393 US 820, 21 L Ed 2d 93, 89 S Ct 200." 395 U.S. 238, 240-41, 89 S. Ct. 1709, 1711, 23 L. Ed. 2d 274, 278 (emphasis added).

"What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which *courts* are

capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the *judge* discharges that function, he leaves a record adequate for any review that may be later sought (Garner v Louisiana, 368 US 157, 173, 7 L Ed 2d 207, 219, 82 S Ct 248; Specht v Patterson, 386 US 605, 610, 18 L Ed 2d 326, 330, 87 S Ct 1209), and forestalls the spin-off of collateral proceedings that seek to probe murky memories." 395 U.S. 238, 243-44, 89 S. Ct. 1709, 1712-13, 23 L. Ed. 2d 274, 280 (emphasis added).

However, if our task is to probe about the opinion for language which more fully describes the holding in terms of what the record must contain, then the following passages are relevant:

"It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." 395 U.S. 238, 242, 89 S. Ct. 1709, 1711, 23 L. Ed. 2d 274, 279.

"The requirement that the prosecution spread on the record the prerequisites of a valid waiver is no constitutional innovation. In Carnley v. Cochran, 369 US 506, 516, 82 S Ct 884, 890, 8 L Ed 2d 70, 77, we dealt with a problem of waiver of the right to counsel, a Sixth Amendment right. We held: 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.'

"We think that the same standard must be applied to determining whether a guilty plea is voluntarily made." 395 U.S. 238, 242, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274, 279.

These excerpts, in light of the express holding set forth above, lead to but one conclusion about the import of *Boykin*. The essence of *Boykin* is that the record must affirmatively show that a defendant entering a guilty plea does so voluntarily and intelligently. Moreover, a plea could not be presumed to be made intelligently and understandingly where the record did not show that defendant knew the federal rights which would be lost by his plea. We

conclude that *Boykin* was concerned primarily with *what* the record must show and not *who* must make the record. Of course, there can be no doubt that the trial judge should as a matter of practice inform the defendant of the rights enumerated in *Boykin,* regardless of other evidence showing that defendant was advised of his rights. But such a rule, however desirable, is not constitutionally mandated, and we decline to create such a requirement as a matter of state law.

This view accords with prior decisions of this Court. In *Lockhart* v. *State,* (1971) 257 Ind. 349, 274 N.E.2d 523, we affirmed the trial court's denial of post-conviction relief where the record revealed that defendant was represented by counsel, had consulted with counsel prior to entering the plea, and appellant acknowledged that counsel had advised him of his constitutional rights. Lockhart unsuccessfully contended that his plea was invalid on the basis of *Boykin.* In *Brimhall* v. *State,* (1972) 258 Ind. 153, 165, 279 N.E.2d 557, 564, we ordered that defendant be allowed to withdraw his plea where the record contained no indication "that the appellant was advised of his rights under the State and Federal Constitutions, and nothing to indicate that he intentionally and freely waived these rights." While Brimhall had consulted with counsel, there was no testimony that he had been advised of his constitutional rights under *Boykin.* Nor did the record reflect such advice by the court. In *Brown* v. *State,* (1973) 261 Ind. 50, 300 N.E.2d 83, we allowed appellant to withdraw his guilty plea where the record showed only that defendant was represented by counsel and did not show that he had been advised of his rights.

In *Brown* we stated:

"The trial court's ruling [denying appellant's motion to withdraw his plea] offends due process, because it implicitly condones constitutional infirmities on the record—infirmities which are the result of judicial error. We are not deciding the merits of this case, i.e., whether there was an intelligent, knowing waiver not induced by threats or duress. There may well have been a constitutionally permissible

waiver, *but such is not reflected on the record."* 261 Ind. 50, 300 N.E.2d 83, 86.

Our holding in *Brown* was clearly premised upon the same interpretation of *Boykin* which we find controlling today.

That interpretation requires that the trial court provide a record of the guilty plea proceeding which demonstrates that the defendant was advised of his *Boykin* rights by the trial court itself or that the defendant was otherwise aware of such guaranties. *Campbell* v. *State,* (1975) 262 Ind. 594, 321 N.E.2d 560, 563-64. We have repeatedly stressed the desirability of the trial court advising a defendant of his federal constitutional rights as enumerated in *Boykin*. We affirm that position today. We believe the essence of that decision requires only that the record affirmatively show that defendant was advised of the *Boykin* rights prior to the entry of his plea. A defendant's guilty plea is not tainted merely because the trial court fails to repeat defendant's rights for him, so long as the *record of the guilty plea proceeding* contains evidence from which the trial court may validly conclude that defendant was meaningfully informed of the specific rights enumerated in *Boykin*. Nothing we have said, however, may be interpreted as relieving the trial court of its absolute duty to decide, on the basis of evidence in the record before it, whether a defendant's plea is made voluntarily and understandingly.

In view of our holding, we believe it prudent to discuss several decisions of the Court of Appeals, which would reach a different result on the facts of this case. In *Thomas* v. *State,* (1974) Ind. App., 306 N.E.2d 136, 138, we find the following statement:

> "The record of the proceedings before the special judge discloses that the *court* did not advise the appellant of his constitutional rights. The State of Indiana argues that the showing in the record that the appellant's attorney had advised him of certain rights is sufficient to establish that said rights were given to the appellant. It is the

court's responsibility to advise an accused of the rights which he has and which he will waive by a plea of guilty. The trial court may not delegate to anyone, including the attorney for the accused, its obligation to advise the accused of his rights. Brady v. United States (1970), 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747; Bonner v. State (1973), [156] Ind. App. [513], 297 N.E.2d 867."

*Thomas* has been followed in *Toon* v. *State*, (1974) Ind. App., 317 N.E.2d 875 and *Kite* v. *State*, (1974) Ind. App., 318 N.E.2d 390. *Kite's* rephrasing of *Thomas* states the rule most forcefully.

"This court has construed Boykin v. Alabama (1969), 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274, as requiring an in-court advisement and waiver of defendant's right to trial by jury, right to confront his accusers, and privilege against compulsory self-incrimination prior to the acceptance of a plea of guilty. *The court's duty to advise is nondelegable and is not discharged by a showing, as in the instant case, that the defendant's constitutional rights were explained to him by court appointed counsel prior to arraignment.* See, Bonner v. State, (1973) [156] Ind. App. [513], 297 N.E.2d 867; Thomas v. State, (1974) Ind. App., 306 N.E.2d 136; Goode v. State (1974), Ind. App., 312 N.E.2d 109; Toon v. State, 317 N.E.2d 875 (Ind. App., decided Oct. 31, 1974)." Ind. App., 318 N.E.2d 390, 391 (emphasis added).

We do not find such rule to be compelled by the authorities cited in *Thomas* v. *State, supra.* In *Bonner* v. *State,* the court faced the following issue.

"As to ISSUE THREE, Bonner argues that the information which he must possess in order to make an intelligent plea of guilty must be conveyed to him by the trial court judge and in the record.

"The State responds that when a defendant is represented by privately obtained counsel, the court may assume that he has been fully advised of the consequences of his plea, and that therefore the court need not admonish him during the hearing." 156 Ind. App. 513, 297 N.E.2d 867, 869-70,

and resolved it thusly:

"CONCLUSION—It is our opinion that because the record is silent as to any waiver by Bonner of his specific constitu-

tional rights against compulsory self-incrimination and to confront his accusers, it may not be presumed that he knowingly waived them because counsel represented him when entering his guilty plea." 156 Ind. App. 513, 297 N.E.2d 867, 876.

This conclusion was undeniably required on the basis of the record for the post-*Boykin* plea before the court in *Bonner*. But see *Conley* v. *State*, (1972) 259 Ind. 29, 284 N.E.2d 803. Compare *Chandler* v. *State*, (1973) 261 Ind. 161, 300 N.E.2d 877, 881; *Campbell* v. *State*, (1975) 262 Ind. 594, 321 N.E.2d 560, 563. The discussion found in *Bonner* v. *State, supra,* following the above stated conclusion, however, strongly suggests that a trial court must always advise a defendant of his federal rights, regardless of whether the defendant is represented by counsel. Read broadly, such a statement goes too far. The relevant inquiry is not whether a defendant is represented by counsel, but whether defendant has been duly apprised of his rights and the record of the guilty plea proceeding so indicates. When the record of the guilty plea proceeding shows only that defendant was represented by counsel and the court failed to advise defendant of his rights prior to the entry of his plea, the requirements of *Boykin* have not been met, and the trial court upon proper motion must allow the plea to be withdrawn. If, however, the record of the guilty plea proceeding indicates that defendant was not only represented by counsel, but that counsel duly advised him of his specific federal rights, even though the trial court did not do so, the requirements of *Boykin* have been met. Nor do we find the broadest reading of *Bonner* adopted in *Thomas* to be required by *Brady* v. *United States*. *Bonner, supra,* at 877 states:

> "In Brady v. United States (1970), 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747, after stating that Brady had been advised by competent counsel, the United States Supreme Court held:
>
> " '* * * Our view * * * is based on our expectations that *courts will satisfy themselves* that pleas of guilty are

voluntarily and intelligently made by competent defendants with adequate advice of counsel * * * .' *Brady, supra* at 758, 90 S. Ct. at 1474. (Emphasis supplied.)"

A careful reading of *Brady* will show that it imposed no new requirement vis-a-vis *who* must inform a defendant of his federal rights. *Brady* did unequivocally affirm the proposition— not a new one, either—that the duty of the trial court is to determine whether the guilty plea is both voluntary and intelligent. *Brady* states:

"The requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized. See nn. 5 and 6, infra. The new element added in Boykin was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily. This Court has not yet passed on the question of the retroactivity of this new requirement." 397 U.S. 742, 748, n. 4, 90 S. Ct. 1463, n. 4, 25 L. Ed. 2d 756, n. 4.

A defendant's knowledge of the rights enumerated in *Boykin* bears upon his ability to enter his plea intelligently and understandingly. The trial court's duty to determine that the plea is intelligently made vis-a-vis *Boykin* is fulfilled when the record affirmatively indicates that defendant has been advised of those rights by counsel. Of course, the trial court must still consider other factors which bear upon the defendant's ability to make an intelligent and understanding plea, such as his general education and mental capacity.

Even the court in *Bonner* recognized that its discussion of *who* must inform the defendant of his federal rights was merely dicta, however persuasive. Thus the court concluded:

"*Boykin* and *Brimhall* in our opinion retain their vitality and govern this case. Our holding is limited, however, to the conclusion that because the record is silent as to any waiver by Bonner of his specific constitutional rights against compulsory self-incrimination and to confront his accusers, it may not be presumed that he knowingly waived them

because counsel represented him when entering his guilty plea." 156 Ind. App. 513, 297 N.E.2d 867, 878.

*Thomas* and the cases following it declared the dicta of *Bonner* to be the law of this state, but for the reasons stated above, we decline to follow that approach in the case at bar.[1]

Petitioner Albert L. Williams gave conflicting testimony at the hearing on his petition for post-conviction relief. When petitioner was appointed counsel, he had already given a signed confession admitting his part in the murder. Petitioner did not controvert the validity of that confession. The thrust of his argument at the post-conviction hearing was that he signed the statement advising him of his rights because he wanted to plead guilty and get it over with, particularly after counsel explained that he could not receive a lesser penalty upon conviction after trial by jury. Such

---

1. We note that petitioners' guilty pleas were entered on January 26, 1973, six months prior to the effective date (July 26, 1973) of PL 325, Acts 1973, being Ind. Code § 35-4.1-1-3, Burns § 9-1204. That act provides:

"*Defendant advised by court.*—The court shall not accept a plea of guilty from the defendant without first addressing the defendant and

"(a) determining that he understands the nature of the charge against him;

"(b) informing him that by his plea of guilty he is admitting the truth of all facts alleged in the indictment or information to an offense included thereunder and that upon entry of such plea the court shall proceed with judgment and sentence;

"(c) informing him that by his plea of guilty he waives his rights to a public and speedy trial by jury, to face the witnesses against him, to have compulsory process for obtaining witnesses in his favor and to require the state to prove his guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself;

"(d) informing him of the maximum possible sentence and minimum sentence for the offense charged and of any possible increased sentence by reason of the fact of a prior conviction or convictions, and of any possibility of the imposition of consecutive sentences;

"(e) informing him that the court is not a party to any agreement which may have been made between the prosecutor and the defense and is not bound thereby."

If this statutory standard had been applicable at the time of petitioners' pleas, and if the record was identical to the one before us, petitioners would undoubtedly have presented a solid case for post-conviction relief.

claim does not carry petitioner's burden of showing that his plea was not entered voluntarily and intelligently. Moreover, in reviewing petitioner's testimony, we find that he admits, on direct examination, an inquiry by the trial court at the guilty plea proceeding which the record thereof does not show:

QUESTIONS BY MR. BRUCE H. KLANG, DEPUTY PUBLIC DEFENDER

Q. "To return to the day of January 26, when you were arraigned before this Court on the charge in the indictment, for first degree murder, the statement that you did sign for your attorney—was this discussed with you by the Court?"

A. "Well, the Court asked us if we fully understood our rights, about the paper, and stuff."

Q. "Did the Court discuss with you the content of that statement?"

A. "Yes, he did."

Q. "What did the Court say?"

A. "That this statement is telling us that we know of our constitutional rights and that we fully understand them."

Q. "Did the Court go over with you these constitutional rights?"

A. "Yes, I believe he did."

Q. "Did the Court advise you of your right to remain silent and the right to a jury trial?"

A. "Yes."

Q. "And did he explain to you your right against self-incrimination?"

A. "Yes."

Q. "And the right to call witnesses in your behalf, and your right to confront witnesses against you?"

A. "Yes."

Q. "The Court did go over these things with you?"

A. "Yes, sir."

The trial court's denial of Albert Williams' petition for post-conviction relief was proper and is hereby affirmed.

Petitioner Steven Wayne Williams testified at the post-conviction relief hearing that he did not recall being advised of his rights, either by counsel or by the court. When asked to explain his brother's conflicting testimony, he ventured that his brother was mixed up and didn't know what he was saying. On cross-examination, Steven gave the following testimony:

QUESTIONS BY MR. PETERSON

Q. "Now that you recall it, Steven, was there anything at the time of your first arraignment or at the time you were sentenced that you didn't understand in this courtroom?"

A. "Some of it I didn't understand."

Q. "What didn't you understand?"

A. "I don't really remember."

Q. "You don't remember. The transcript, then, pretty well speaks for itself, does it? The record here in the court?"

A. "Yes."

Q. "Do you feel you are of sound mind today?"

A. "I guess."

Q. "So far as you know. Do you think your brother is of sound mind today?"

A. "I guess so."

Q. "You guess so. You were satisfied at the time, were you not, with Mr. Hartzog as your attorney?"

A. "Yes, sir."

Q. "All during the proceedings?"

A. "Yes, sir."

Q. "And you stated on many occasions, did you not, that you fully understood your rights?"

A. "Yes, sir."

Q. "You also signed a statement which clearly outlined all of your rights, that you understood them, did you?"

A. "Yes, sir."

MR. PETERSON: "That is all."

MR. KLANG: "I have no further questions, Your Honor."

Steven Williams then answered affirmatively when the court asked him whether the statement which he had signed had been read to him in open court at the time the statement was received.

> The trial court's denial of Steven Wayne Williams' █ petition for post-conviction relief was proper and is hereby affirmed.

For all of the foregoing reasons, the judgments of the trial court denying these petitions for post-conviction relief are hereby affirmed.

Givan, C.J., and Arterburn, J., concur; Prentice, J., concurs in result; DeBruler, J., dissents with opinion.

## DISSENTING OPINION

DeBruler, J.—The Elkhart Circuit Court has to date been reversed twice upon the same issue presented by appellants here. In *Brimhall* v. *State,* (1972) 258 Ind. 153, 279 N.E.2d 557, we reversed the court's judgment denying a post-conviction petition to withdraw a guilty plea, for failure of the record of the guilty plea proceeding to demonstrate an advice of rights and a knowing and intelligent waiver of them. Referring to applicable United States Supreme Court decisions and their underlying rationale, we stated:

> "The court in *McCarthy* [v. United States, (1969) 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418], reversed a conviction where the federal rule was not complied with holding that there is no adequate substitute for 'demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him. (Emphasis added.) 394 U.S. at 470, [89 C. Ct. at 1173.] In summing up their disposition of this case, the U.S. Supreme Court stated:
>
> > 'Our holding that a defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew not only will insure that every accused is afforded those procedural safeguards, but also will help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea

convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate. It is, therefore, not too much to require that, before sentencing defendant to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking.' 394 U.S. at 472, [89 S. Ct. at 1174.]

This reasoning is persuasive and was given constitutional dimension in *Boykin* v. *Alabama,* (1969) 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274, where the U.S. Supreme Court held that in order to satisfy the constitutional requirements of due process, the record of the entry of the plea must demonstrate a knowing and intelligent waiver by the accused of his constitutional rights. Since the *Boykin* case, presuming waiver from a silent record in a guilty plea case is impermissible.

\* \* \*

There is nothing in this record to indicate that the appellant was advised of his rights under the State and Federal Constitutions, *and nothing to indicate that he intentionally and freely waived those rights.*" (Emphasis added.) 258 Ind. at 164-65.

In *Darmody* v. *State,* (1973) 156 Ind. App. 88, 294 N.E.2d 835, the Court of Appeals for the Third District reversed the Elkhart Circuit Court's denial of a post-conviction petition to withdraw a guilty plea, for failing to make a record of the guilty plea proceeding reflect the waiver of the right to counsel. There, the court explained:

"There must be a clear waiver of the right to the presence of counsel at the arraignment. The trial court has the affirmative duty to demonstrate a knowing and intelligent waiver *in the record.*

\* \* \*

The trial court's record must reflect a knowing and intelligent waiver which has been voluntarily made. Waiver will not be presumed or inferred. The record in the present case is silent as to any knowing and intelligent waiver. Therefore the judgment of the trial court should be and the same hereby is reversed. . . ." 294 N.E.2d at 839-40.

As might be expected from a court which refuses to be instructed, the record in this case of both the guilty plea

proceeding *and* the post-conviction proceeding does not show a waiver of federal constitutional rights. At no time does anyone inform the accused that the effect of their pleas of guilty is to waive their rights to have the State prove them guilty beyond a reasonable doubt, and to be free from compulsory self-incrimination, and to confront their accusers. A waiver of these rights is governed by federal constitutional standards. *Boykin* v. *Alabama,* (1969) 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274. A waiver of them may not be inferred from this record no matter how it is viewed, since there is no record affirmation by the accused that they desire to forego these fundamental rights. *Carnley* v. *Cochran,* (1961) 369 U.S. 506, 82 S. Ct. 884, 8 L. Ed. 2d 70. We are presented here by an advice of rights by defense counsel and simple pleas of guilty. The failure of the trial judge personally to question the accused concerning their understanding of the dimension of their rights prior to extracting the guilty plea is contrary to our holding in *Brimhall* v. *State, supra. Brimhall* requires the trial judge to perform this function. An advice of rights by the prosecutor or defense counsel does not satisfy the constitutional mandate that the trial judge, prior to accepting the plea of guilty, determine for himself upon addressing the accused, that the accused understands his rights and understands that they will be given up by a plea of guilty. These rights are personal to the accused. They do not belong to counsel. It is counsel's job to raise the awareness of the accused of his rights and the practical effect of a waiver. Then the court must test the effectiveness of counsel's educative efforts. This is what must be done under the law as it exists today. I would settle for no less.

Here the record discloses that the court, reflected by the record, does not understand the twofold nature of the guilty plea. A guilty plea is not only a judicial admission of guilt. It is also a waiver of federal constitutional rights. It is not a waiver of arraignment. Prior waivers under the *Miranda* rule cannot take the place of it. It cannot be inferred from any

advisement of what the abstract rights are and a subsequent plea of guilty.

And finally, this issue of waiver is before the Court in this appeal. In the motion to correct errors the accused posited:

> "2. The court erred in not finding as fact that the court did not question the Petitioners concerning their waiver of constitutional rights upon pleading guilty, since the complete record of the arraignment on January 26, 1973, discloses no such examination."

And in their brief, the accused argue:

> "The Elkhart Circuit Court totally disregards the numerous cases in this state which have flowed from *Boykin, supra,* which places the obligation on the court to establish on the record when a guilty plea is accepted, that the defendant does so in a knowing, intelligent, and voluntary manner. The record herein is not one showing that either defense counsel or the prosecuting attorney questioned the defendants herein as to the nature of their understanding of constitutional rights *or their intent to waive any.*" (Emphasis added.)

The requirement that the trial judge at the guilty plea proceeding personally address the accused and delve into his appreciation of his rights and the fact that a plea of guilty is a waiver of them is now statutory. Ind. Code §§ 35-4.1-1-2 and 35-4.1-1-4, being Burns §§ 9-1203 and 9-1205. Ind. Code § 35-4.1-1-5, being Burns § 9-1206, requires a full and complete transcript of the judge's colloquy with the accused. Perhaps together the Indiana Supreme Court and the Indiana General Assembly can convince the Elkhart Circuit Court that his personal attention to the advisement of rights and extraction of a waiver is mandatory.

I vote to reverse the judgment of the trial court with instructions to grant these petitioners' leave to withdraw their pleas of guilty.

NOTE.—Reported at 325 N.E.2d 827.