JAMES WYATT, JR. *v.* STATE OF INDIANA.

[No. 3-474A63. Filed May 27, 1975. Rehearing denied July 2, 1975. Transfer denied September 17, 1975.]

*Harriette Bailey Conn,* Public Defender of Indiana, *William B. Bryan,* Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellee.

STATON, P.J.—Wyatt pled guilty to the crime of first degree burglary and was sentenced to the Indiana State Reformatory for a term of not less than ten (10) nor more than twenty

(20) years. Later, Wyatt attempted to set aside his guilty plea through a petition for post-conviction relief under Indiana Rules of Procedure, Post-Conviction Remedy, Rule 1. This petition was denied by the trial court. On appeal from this denial of post-conviction relief, Wyatt contends that his guilty plea was not knowingly and intelligently entered and that he was not properly advised of his constitutional rights before entering his plea of guilty.[1] We affirm the trial court's judgment which denied Wyatt's petition for post-conviction relief.

## I.

### Knowingly and Intelligently

At his post-conviction relief hearing, Wyatt contended that his guilty plea was not knowingly and intelligently given because his counsel led him to believe that he would receive a one to ten year sentence rather than the ten to twenty year sentence that he did receive. Wyatt testified as follows:

"Q. Did Mr. Williams give you any idea, or suggest to you what sentence you might receive upon your plea of guilty?

"A. Yes, he said I had a good chance of getting one to ten.

"Q. A good chance?

"A. Good chance because of my age.

"Q. I presume that was for—on the Minor's Statute?

"A. Yeah.

"Q. Did he promise you you'd get a one to ten?

"A. No, he didn't promise, no.

"Q. He just told you that you had a good chance.

"A. Yeah.

"Q. In your Petition, you pointed out that, er, you raised the allegation that your plea of guilty was not entered properly, is that true?

"A. Sir?

---

1. Wyatt also contends for the first time on appeal that the guilty plea transcript in this cause was not in compliance with Indiana Rules of Procedure, Criminal Rule 10. Since this issue was not set out in Wyatt's motion to correct errors, it is waived. Indiana Rules of Procedure, Trial Rule 59(G).

"Q. You raise in your Petition as a grounds for relief that your plea of guilty was improper? Do you recall that?

"A. Yeah.

"Q. Will you tell the Court why it was improper?

"A. Cause I didn't understand—I didn't fully understand what was, you know, supposed to happen after that because the Judge, I mean, Joe Williams promised me— he said I'd get one to ten.

"Q. How old were you when you pled guilty?

"A. Eighteen.

"Q. How much education had you had?

"A. Eleventh grade.

"Q. Can you read and write?

"A. Yeah.

"Q. Now, you just told us that Mr. Williams told you that you had a good chance to get a one to ten, or you might get a one to ten?

"A. Yeah.

"Q. And now you just told the Court that he promised you a one to ten?

"A. Naw, I changed it—I changed it.

"Q. You're changing your testimony?

"A. Sir?

"Q. Are you changing your testimony?

"A. No, I'm not. I said he didn't promise me this, but he made it seem like I would get this. He made it almost certain, you know.

"Q. Is that why you think your plea of guilty was improper?

"A. Yeah.

"Q. Why do you think Mr. Williams was an ineffective attorney in relation to you in these charges?

"A. Cause he didn't know what would happen, you know.

"Q. Pardon me?

"A. Like he wasn't sure what would happen, you know, like he said I'll get a one to ten but I end up with a ten to twenty—like he didn't know what would happen himself.

"Q. He didn't know what happened . . .

"A. What was supposed to happen.

"Q. On your being sentenced?

"A. Yeah.

"Q. Did he ever tell you that sentencing was up to the Judge?

"A. Yes.

"Q. And that he couldn't control what the Judge decided?

"A. No—yeah, he said that, yeah.

"Q. He told you that he couldn't control the Judge's decision in relation to what sentence you received, is that true?

"A. Sir?

"Q. Did he tell you that after you pled guilty, that the sentencing, your sentencing, was up to the Judge, that no one else could make the decision on what sentence you would receive? Did he tell you that?

"A. Yeah."

Unlike the cases of *Dube* v. *State* (1971), 257 Ind. 398, 275 N.E.2d 7 and *Watson* v. *State* (1973), 261 Ind. 97, 300 N.E.2d 354, we can not say that Wyatt was induced to plead guilty because he was assured that he would receive a sentence of from one to ten years. It is true that a petitioner may be entitled to have his guilty plea set aside upon a showing that he was ill-advised by incompetent counsel. *Cf. Goff* v. *State* (1960), 240 Ind. 267, 163 N.E.2d 888. However, Wyatt himself testified that his attorney never promised him that he would get a one to ten year sentence and specifically advised him that the sentence was entirely up to the judge. This testimony does not demonstrate that Wyatt's counsel was in any way incompetent. Additionally, Wyatt further testified that his attorney met with him at least twice before the arraignment hearing and during these meetings explained the charge, the penalty, and explored the efficacy of pleading guilty. Upon this evidence, the trial court correctly determined that Wyatt's guilty plea was intelligently and knowingly entered. *See Haver* v. *State* (1974), 162 Ind. App. 93, 317 N.E.2d 884.

## II.
### Constitutional Rights Waiver

On appeal Wyatt contends that he was not properly advised of his constitutional rights before entering his guilty plea. Wyatt entered his guilty plea in 1970 after the United States Supreme Court decided *Boykin* v. *Alabama* (1969), 395 U.S. 238, 89 S. Ct. 1709, 23 L.Ed.2d 274. Wyatt contends that the entry of his guilty plea did not comply with *Boykin, supra,* because the prosecutor, in the presence of the judge, advised Wyatt of his constitutional rights. At Wyatt's arraignment, the prosecutor read questions and Wyatt responded. Additionally, the trial court heard testimony by a Fort Wayne police officer as to the factual basis for Wyatt's plea.[2]

The Supreme Court of Indiana has recently rejected the contention that personal advisement of rights by the trial judge at the arraignment hearing is constitutionally required. In *Williams* v. *State* (1975), 263 Ind. 165, 325 N.E.2d 827, Justice Hunter, writing for the majority, stated:

". . . The essence of *Boykin* is that the record must affirmatively show that a defendant entering a guilty plea does so voluntarily and intelligently. Moreover, a plea could

---

2. Wyatt's plea of guilty was entered before the passage of IC 1971, 35-4.1-1-3, Ind. Ann. Stat. § 9-1204 (Burns Supp. 1974) which requires that the trial court address the defendant and advise him of his rights. Also, the practice of allowing the prosecutor to advise a defendant of his rights before entry of a guilty plea would not comply with the guidelines set out in the approved draft of the American Bar Association Project on Minimum Standards for Criminal Justice, Pleas of Guilty:
"1.4   Defendant to be advised by court.
The court should not accept a plea of guilty or nolo contendere from a defendant without first addressing the defendant personally and
(a)   determining that he understands the nature of the charge;
(b)   informing him that by this plea of guilty or nolo contendere he waives his right to trial by jury; and
(c)   informing him:
(i)   of the maximum possible sentence on the charge, including that possible from consecutive sentences;
(ii)   of the mandatory minimum sentence, if any, on the charge; and
(iii)   when the offense charged is one for which a different or additional punishment is authorized by reason of the fact that the defendant has previously been convicted of an offense, that this fact may be established after his plea in the present action if he has been previously convicted, thereby subjecting him to such different or additional punishment."

not be presumed to be made intelligently and understandingly where the record did not show that defendant knew the federal rights which would be lost by his plea. We conclude that *Boykin* was concerned primarily with *what* the record must show and not *who* must make the record. Of course, there can be no doubt that the trial judge should as a matter of practice inform the defendant of the rights enumerated in *Boykin,* regardless of other evidence showing that defendant was advised of his rights. But such a rule, however desirable, is not constitutionally mandated, and we decline to create such a requirement as a matter of state law." *Williams* v. *State, supra,* 325 N.E.2d at 832.

Justice Hunter further stated:

". . . We have repeatedly stressed the desirability of the trial court advising a defendant of his federal constitutional rights as enumerated in *Boykin.* We affirm that position today. We believe the essence of that decision requires only that the record affirmatively show that defendant was advised of the *Boykin* rights prior to the entry of his plea. A defendant's guilty plea is not tainted merely because the trial court fails to repeat defendant's rights for him, so long as the *record of the guilty plea proceeding* contains evidence from which the trial court may validly conclude that defendant was meaningfully informed of the specific rights enumerated in *Boykin.* Nothing we have said, however, may be interpreted as relieving the trial court of its absolute duty to decide, on the basis of evidence in the record before it, whether a defendant's plea is made voluntarily and understandingly." *Williams* v. *State, supra,* 325 N.E.2d at 833.

Under *Boykin, supra,* as interpreted by *Williams* v. *State, supra,* our inquiry becomes one of whether there is an affirmative showing in the record that Wyatt's plea was entered voluntarily and understandingly. Before entering his guilty plea, Wyatt affirmed that he had been fully advised of his constitutional rights by his attorney prior to the hearing. The record also shows that Wyatt was specifically advised by the prosecutor at the arraignment hearing of the nature of the charge against him and the punishment for such a crime. Also, he was advised of his constitutional right to trial by jury, to confront one's accusers, and of his privilege against compulsory self-incrimination.

Wyatt further contends that although he was advised of these rights, he was not advised that he would waive these rights by pleading guilty. The record affirmatively shows that Wyatt understood the consequences of entering his guilty plea. Wyatt was specifically advised that if he did not plead guilty, he would be entitled to a trial. Presumably, Wyatt understood that if he did plead guilty, he would not be entitled to a jury trial with its attendant rights. Wyatt also answered in the affirmative when asked if he understood the consequences of entering his plea of guilty.

The trial court did not err in accepting Wyatt's guilty plea. The record before us shows that Wyatt was advised of his constitutional rights and that he understood the consequences of pleading guilty.[3]

We affirm the trial court's judgment denying Wyatt's petition for post-conviction relief.

Garrard and Hoffman, JJ., concur.

NOTE.—Reported at 328 N.E.2d 450.

---

3. However, nothing in this opinion should be construed by the reader as approval of the procedure used by the trial court in this case. The preferable practice is for the trial court to personally advise the defendant of his constitutional rights and to personally question the defendant to determine if he understands the consequences of pleading guilty. This practice is now mandated by IC 1971, 35-4.1-1-3, Ind. Ann. Stat. § 9-1204 (Burns Supp. 1974).